Good morning, your honors. May it please the court, I would like to reserve four minutes. Quinn Denver representing Sundeep Dharni. There is one technical matter I'd like to address first. The motions panel ordered Mr. Dharni released on an appeal, on bail pending appeal, and he is present in court with his family. But at the time they found a reasonable probability that he would succeed in his public trial claim. And on that basis, they ordered the government's brief filed, but ordered no further briefing. So ---- I'm sorry, I didn't hear what the last part of that was. I'm sorry. On that basis, they ordered the government. They ordered the government's brief filed, but they ordered that there be no further briefing. Oh, I see. I had prepared a reply brief. I did wonder about that. And did not file the reply brief in light of that order. But if the Court would like me to file it, I would be glad to do so. Well, let's see where we get ourselves. I mean, I find all the procedural questions here very complicated. And that's what you really didn't get into, the question of what ---- Okay. Go ahead. Well, the basic claim that Mr. Dharni makes is that the closure of the courtroom for the entire jury selection was a violation of his Sixth Amendment right to a public trial. Okay. Can we clarify the record on that? The Court didn't, by its stated order, order the clearing of the courtroom for the entirety of the voir dire. What he said was we need the seats for the veneer, and it shall be the family and materially different if, in fact, it was not a ban for the entirety. So where are we on that? Your Honor, I understand that. And that's a point that was raised by the government. However, the Court never indicated that the people could come back in, that it was proper to come back in. And if he says you can come back in as soon as the seats are available, he's made his order. You can come back in as soon as seats are available. Your Honor, that's the point. Now, how many challenges were there accepted? How many jurors were accepted? I don't know that, Your Honor. Okay. If you look at the record, you'll find there are 14. There was also a recess called, correct? That may be correct, Your Honor. Okay. How many were challenged before that? I don't have that number. Four. So we have a situation where the judge says, come back in any time the seats are available. We have four who are challenged, then a recess, then 10 more, people coming out. The individuals read or heard exactly what the district court said. It's open. Now, why? And you have a person, a family, who heard it. You have the defendant. You have the lawyer. Why are you saying that the judge has to go outside and tell the people you can come back in now when he's already told them they can come back in as soon as seats are available and 14 seats became available? Well, Your Honor, here's the problem with that. Judge Garcia made this order. Judge Garcia never had his bailiff come and tell people they could come in. He doesn't have to. He made an order that people listened to. I understand that, Your Honor. They were all in the court when he made the order. He doesn't have to run a service saying, and I really meant it, does he? Your Honor, I understand what you're saying. The question is what he intended by that. Judge Garcia... Did he say you can come back in once the seats are up? He said something short of that. What exactly did he say? I'd have to get that in front of me right now. This is something that we were not able to... He said they'll wait out in the hall during jury selection until seats open up, until seats open up. That's what he said. And what I was trying to say, Your Honor, is this matter was heard on a Section 2255 hearing by Judge Garcia, who issued that order. He never suggested for a moment that he expected to put the burden on the family or the public spectators to determine when it was proper to come in. And this same issue came before the First Circuit in Owens v. United States. And the court found, and here's what they said, and this makes total sense. The fact that no one knocked is of no significance. Spectators do not have the burden of banging on closed courtroom doors during trial. This is particularly so when the courtroom has previously been sealed. The government notes that spectators eventually did knock on the door and they're permitted to enter, but the possible existence of some spectators, brave or arrogant enough to seek admission, does not convert the courtroom into an open one. Kagan. I mean, one could have an evidentiary hearing to flesh some of this out, in the sense that we don't know what the jurors were going out in a door where these people would have been seen. We don't know where they were. We don't know what the – whether the marshals actually would have let them in without a court, or there are various things that one would have to know if you thought this was ambiguous or there was any responsibility. So at worst, you would – you could have an evidentiary hearing on those issues. Well, Your Honor, except that this matter did come before the judge who made the order. And certainly, he's a very experienced judge, not a senior. If he had felt that that was the pertinent point, he did hold a hearing on the motion, never suggested for one moment that he had not ordered them out until they were allowed to be back in. And if they were supposed to make this decision themselves, worry about disrupting the jury selection proceedings. Judges don't normally like people coming in and out, and Judge Garcia never suggested for a minute that he meant they would come in bit by bit. I'm sorry. The suggestion was when it was over, you could have it. Exactly what he did say. That's exactly what he did say, as they become available. Why isn't this closer – why isn't this closer to the Sherlock case in our circuit, where we've indicated the appellate's family, the judge indicated appellate's family members and the general public to use the available seating. Appellant's was only two occasions where there were insufficient seating. And he went on to say this was not a closure. There was not even a closure, and you're assuming there's a closure. Well, they're certainly ordered out. Okay. Can we come back? And they're never authorized to come back in except on their own motion.  So what was said? Okay. It said, So that during jury selection, all of the family and friends of the defendant and any other spectators that are out there will wait out in the hall during jury selection until seats open up. Okay. So coming back to my original question or point was, it was not on its face a permanent exclusion during the entirety of jury selection. It said until seats open up. Now you're saying, well, courts don't normally or judges don't normally allow people to wander in and out of the courtroom. I'm not familiar with the practices of Judge Garcia, but I don't know why a family member would feel that they somehow had to get court permission to come in if a seat became available. Presumably all the seats that were available were taken up by the veneer. And as Judge Wallace pointed out, there was a recess. So let's suppose that they didn't react to the fact that four people walked out and they didn't then feel, and that might be understandable, they wouldn't feel that they could just walk in unless somebody, a deputy came out and told them or a marshal came out and said, you can come in now. But when there's a recess, not everybody is sitting around in the courtroom by themselves. So on its face, it seems to me, I mean, the counsel would have gone out and been able to tell them. That's why it's so improbable. And what we're saying and what you're arguing for is that there is a constitutional violation that's structural error because the judge excluded the family for the entirety. I agree. If that order had been that the family and friends will be excluded for the entirety of the jury selection, regardless, this would be a very serious case. But what I'm having trouble with here, particularly when this was never raised, trial counsel didn't raise it, appellate counsel didn't raise it. So talk about after the fact. Let me address the language. Yeah. The question is, does that mean that the jury selection is over and they're open up and they're able to be closed during selection, jury selection, until seats are available? No. Seats open up. Open up. Okay. The question is, does that mean when jury selection is over and they're open up, or does it mean as individual seats you can come in? Now, Judge Garcia heard this. He could have said and would have said if he meant that people should dribble in as the jurors went out, he would have said that. We don't even know. And the language is certainly ambiguous. We don't know, for example, whether the jurors who are walking out are walking out through the main door or through the front door. We don't know that, Your Honor. And you may be correct. We need an evidentiary hearing on that, because that is certainly ambiguous and the family certainly understood it to mean they couldn't come in. Is that in the record? They didn't return, Your Honor. They wanted to be there. Is that in the record, they didn't return? I went through the record. I didn't find anything as to whether they did or did not return, not a word. It was an allegation in the 2255 petition, and it was not contested by the government. I don't think there's any dispute about that, Your Honor. There was a record? It was an allegation. An allegation. And a verified 2255 motion that the government did not contest. And I think you can ask the U.S. attorney who tried the case. I don't think he'll contest it. Well, it would have been very easy for the attorney who represented the defendant at the time, if he wished to preserve the issue, to make a record right then. Absolutely. And if there's no record, how can we make the assumption of how they felt and whether they believed they couldn't come back in? Well, you asked me the question. In opposition to this. You asked me the question, did they return? Yeah. During jury selection. And is it in the record? I tried to explain. I think it is, because there's a sworn allegation of that effect that the government did not contest. Now, their feelings about it and their intent, I can't, I can only say circumstantially the fact they didn't return as their family member was being tried in jury selection was probably, it seems logically, due to the ambiguity at best of the judge's discretion, not because they didn't want to be there. That's my only point. Can you take a few minutes to discuss, assuming either now or later, after an evidentiary hearing, someone were to conclude that there was a public trial problem, what do we do next, given, A, that this is a plain error standard, B, that there's presumably an ineffective assistance issue? How does the structural error feed into those considerations? Well, Your Honor, first of all, the point that was made in the epilese brief we didn't deal with in the reply brief, that there was a procedural default because there was no objection by defense counsel, that has been forfeited. They did not raise it in district court, and therefore they have forfeited. And I will read you what they said exactly, if I can find it. They only raised the question of procedural default by the failure to raise on appeal. So this is what they raised in the district court in response to the petition. In this case, Darney appealed his conviction but did not challenge the removal of his family members during selection. In failing to do so, he procedurally defaulted that claim. Judge Garcia understood that that claim of procedural default was limited to the failure to raise on appeal because he said, plaintiff argues defendant procedurally defaulted his claim by not raising it on appeal, and the claim also fails on the merits. Now, that's an affirmative defense, procedural default based on failure to object by trial counsel. They did not raise it. They forfeited. U.S. v. Kennedy, Second Circuit, 1997, says because the government failed to raise its procedural default defense in the district court, this is on a public trial claim, it is precluded from doing so now. So I think that is taken care of, plus in Withers, the Court said it would be ineffective assistance to counsel, not to raise these issues. But the Court said it would be ineffective assistance to counsel, not to raise these issues.         It's a traditional Supreme Court judgement. It didn't say anything, Your Honor. No, definitely. Didn't say anything, Your Honor? Definitely. I mean, everything wasn't couched around this is not a frivolous argument. Oh, you but it but it was. The reason was, of course, it came up on a petition. Right. Exactly. Which was dismissed summarily without anything from the government. The only thing that they were asking to have it sent back for on an evidentiary hearing was to find out whether the allegations of the petitioner, that there had been a total closure, was true, because he made that allegation, but the government hadn't had a chance to address it. And the second question was whether the Court had, in fact, complied with Waller by going through those steps. He said, Petitioner, they did not. The government never had a chance to do that. I also understood all their procedural discussions about the structural error and what the result was and all that. All of it was, you know, this is a colorful argument. But the clear implication of it, Your Honor, is if the district court found there was a total closure, if the district court found there was no compliance with Waller, then all these things would click in as ineffective assistance to counsel, structural error, et cetera. That's the clear implication. So is your argument that if there's structural error, there's always plain error? If there's structural error, there's never a procedural default? If there's structural error, there's always ineffective assistance? Or exactly what? Well, I think you can take them one by one. First of all, as I say, I don't think we have a procedural default question by the failure to object because it's been forfeited. As to the failure of counsel to raise it on appeal, it is an ineffective assistance to counsel for a reasonably competent counsel not to raise the question of the failure to of the closure of this courtroom, which was clearly in violation of Waller and Presley and the other ones. The government suggests, well, may have wanted to raise other better issues. In fact, the three issues that were raised by counsel on appeal were disposed of by this court in a one-page memorandum decision. So it was ineffective assistance to counsel to raise that. And then the question is, is the prejudice from that? Actually, the first question is, does that just remove the procedural default on the public trial claim? There's also a separate question as a separate ineffective assistance to counsel claim, whether we can show the reasonably probable there would have been a different result. And we believe that there would be the structural error, in spite of a plain error review, would have resulted in a reversal. And that's, I think, my point. I don't know if that's clear. I know this is bouncing around, but you're over your time, and we will give you a minute of rebuttal. Thank you. Thank you. Good morning, Your Honor. Steve Lapham for the United States, and I was trial counsel below. Let me first by start by talking about what there is no dispute over. There is no dispute. The government certainly doesn't quarrel with the fact that the defendant has a Sixth Amendment right to an open and public trial, nor that that claim. Including a voir dire, even if the voir dire only takes an hour and 40 minutes. Exactly. Exactly. The question here is whether at this late stage in the proceedings, the defendant under the circumstances of this case is entitled to relief. And the government's position is no. And I think there are a couple of different avenues to get there. I think it's probably clear from my brief that one of those avenues is that the defendant double defaulted those claims. He failed to raise the issue at trial, failed to issue or raise the issue on appeal. Yes, but doesn't that just lead to an IAC claim? Which, again, there was no hearing on, but there could be. I think it folds into an IAC claim. I think that's the next question. But particularly on appeal, I mean, because if there were, presumably under our case laws, I understand that there would be plain – there would quite likely be plain error and structural – and because of structural error, a reversal on appeal, had it been raised on appeal. Well, I don't think that necessarily follows, because this Court on a couple of occasions has found that in circumstances similar to this, in unpublished opinions – Yes, but they're unpublished opinions. Well, they're unpublished opinions, but they stand for this proposition. And there is one published opinion that stands for this proposition, that the Sixth Amendment right to a public trial is waivable. Rivera, the published opinion, held that. In fact, Judge Bergeon, you were a member of that panel. I wrote it. She wrote it. I know that. And it is waivable. Yes. But that is the question. And two subsequent panels in unpublished opinions have followed suit and said the same thing, that the right is waivable. And it's not precedent that you're bound to follow, but it does indicate that five additional of your colleagues have accepted the view. But waivable, as we all know, is different from forfeitable. And forfeitable leads to plain error. And ordinarily, as I understand our case, Lon, you can correct me if I'm wrong, if there is a structural error, it is likely to be a plain error. I think that is incorrect. And I think the case makes that incorrect. I'm sorry? What case disputes that? I think that if you consider the structural error, and I don't think the Court has spoken with one voice on that issue, but if you consider it. I'm sorry? You don't think so? I don't think so. I think in Waters, the Court said that it was not structural error. And I believe in other cases there's been a suggestion that it is structural error. Didn't Rivera say flat out that it was? I think Rivera may be the other case that indicated it may be structural error. But that's it. It has to be structural error. How can it not be structural error? If it is challenged at the time and refused, how can it not be structural error? Okay. Because there are at least three Supreme Court decisions that have addressed issues like this and indicated that it's a waivable right. It seems to me if it's waivable, it's different than nonstructural. Well, if it's the right to counsel is waivable, but it's structural if you don't waive it. Well, maybe we're talking past each other. I understand the defendant's argument to be that because it's structural error, it automatically leads to reversal. If it's not waived. All right. And in at least three of the cases that I've argued, the waiver is still on the table. The forfeiture of claims is still on the table, even though it's structural error. And in at least three Supreme Court opinions, Levine, Singer, and Peretz, the Court came to the conclusion that the Sixth Amendment right had been waived, despite the fact that if it's considered structural error, prejudice is presumed. So go ahead. Okay. I just think you're talking apples and oranges, but go ahead. All right. I would say this, that can I just sum up what you were saying, then, as I understand your position is structural error, if it does apply to the voir dire exclusion, nonetheless, the right can be waived. And if it was waived, even if it had been structural error, then it's gone. And what's the response to the notion that it's ineffective assistance of counsel to therefore undercut the failure, it seems like, that leads to an ineffective assistance. You had a winning argument at trial to object, presumably, and secondly, if not If you didn't make the argument at trial, then the appellate counsel certainly should have raised it on appeal. And therefore, the waiver or the forfeiture doesn't hold, because it's overridden by ineffective assistance of counsel. Your Honor, it seems to me that that involves a considerable amount of money-morting quarterbacking for this reason, that at the time, the defense counsel and his client apparently didn't think there was any particular significance to the fact that there was going to be this temporary exclusion of the family from the courtroom. Several years later, the Supreme Court comes down with an opinion. Now, from a technical standpoint, it appears that defense counsel could have raised a motion that would now have entitled him to a new trial. I don't think that can relate back to the original, what was in the original mind of the defense attorney. Kennedy, but the opinion came down before the appeal, didn't it? Yes. No, I'm sorry. The opinion came down, the Presley opinion came down in 2010, I believe. After both, after the trial and the appeal. Correct. Okay. Correct. It wasn't a big mystery, though, and Presley said it wasn't. Well, that's right. I understand that part. But the question is, when you get to ineffective assistance of counsel, you're looking at counsel's performance not just on one specific issue, but on a broad array of issues. Was he, at this stage in the proceedings, we're talking about whether counsel's performance was so deficient that he was essentially deprived the right? And here you had an issue that could have led to an automatic reversal and he didn't raise it. Now, you say it wouldn't have, but there was a pretty good argument that it would have. Well, but the question is still, the first question is still, would effective counsel have potentially done the same thing? Well, that's what I'm asking you. Would effective counsel, knowing that he had an issue that had a, let's say, 75 percent chance of an automatic reversal, not have raised it? Well, I don't think that's the proper way to view it. I think you view it at the time it's happening. Would effective counsel think there's no big deal about removing the family members from the courtroom for a limited period of time? Is that something I want to object about? I think a lot of very effective counsel. Could you, since we had a very lengthy discussion with Mr. Denver of the merits of this issue, are you interested in addressing them? That is the question of whether there was, in fact, an unconstitutional closure here. Yes. Yes. I think Judge Wallace hit the nail on the head, and he did far more fact-finding than I did on this issue when I was there. Is that because you were there and you knew that these people actually couldn't have come back in? Well, to be honest, it's not something I even thought about. I don't – I didn't consider it a big moment in the trial, and I'll be willing to bet that defense counsel didn't think so either.  I think what's more relevant is what Judge Garcia seemed to view the issue when it was presented to him, because if we were to go for an evidentiary hearing, it's does not make the point about what he said being limited. What he seems to be saying, or what he does say, is he talks about – or his analysis is whether the exclusion for the entirety of the jury selection was a violation, and he finds the exclusion for the entirety to be trivial. He does, in fact, reference the fact that there was a recess, a 15-minute recess during the selection, as well as a recess after the jury selection was completed, and he said it took less than two hours, and then the content of what went on during that period. He doesn't himself say, well, I only told them that they had to be out until seats were available. He does, in fact, analyze it as if the – and rule as if the entirety was justified as a trivial incident. So what are we supposed to make of that? Your Honor, I read that portion of his ruling to be addressing the Gibbons case and the Ivester case, where he's trying to determine whether it was a trivial closure. So I think he's trying to fit the facts within that rubric. But he didn't. Right. And the facts he's assuming are an hour and 40-minute closure during the entirety of voir dire. If those weren't the facts, then he could have said that, and he could have made a different argument about why that was trivial. Correct. But if you look to his words, I mean, it's more than just until seats open up. He says, wait out in the hall during jury selection until seats open up. He contemplated that the jury, the family members, would be out in the hallway. Yes. And I think he – But he doesn't say in his ruling – he doesn't say that in his ruling. What he's saying is they were out there for less than two hours, and that's trivial because of what – both because of time and what went on during the interval. So that's the trouble I have. Right. Well, I – he may have thought he didn't need to say that, having quoted – We don't even know whether all of the jurors were seated so that there – when people left, there were open seats. We don't know that. We don't know – some of them were presumably seated in the jury box, so we don't – we don't know that there ever were open seats, actually. And we don't know whether the jurors were going out in a place where anybody could see them. That's right. So we have no way of knowing on this record, in fact, unless one, as Judge Fischer suggests, reads the order as assuming that it was closed for the whole period. And the alternative is we have no idea whether there was any practical way that anybody could have come in. Well, and the burden is on the defendant, you know, in the 2255 motion in the initial He's essentially alleged no, that nobody could come in. Well, he's filed declarations from family members in which they basically state the bare facts. They understood they were – well, I don't know if that's what they understood, but they said they were excluded. Well, they said they were removed from the courtroom. There's no dispute about that. The question is, they don't go on. Well, do you think it's worth having an evidentiary hearing on this, or is it sufficiently your understanding and Judge Garcia's understanding that, in fact, they couldn't and didn't come back in, that we should just move on? Well, I don't believe an evidentiary hearing is necessary at this point, specifically because of the position is that even if all these facts are true, it's still trivial. Well, yes, but in the first instance that they're precluded, they're double defaulted their position. I understand all that. But are you – if we were to assume that, in fact, the courtroom was closed for an hour and 40 minutes or during the entirety of one year, would that be the better way to proceed, rather than having an evidentiary and then deal with the defaults and everything else? I think – Rather than sending it back for a hearing on whether that was true or not, or is it so actually true to the people who were there that it really isn't worth having an hearing? I don't think an evidentiary hearing would be that revealing. I don't think any additional facts would come out that we essentially don't already know that at least that would bear on this issue. So are you willing to proceed, then, on the assumption that, in fact, there was a closure for an hour and 40 minutes during the entirety of one year? Well, yes, but that's subject to interpretation. There's no question the family members were not there during the hour and 40 minutes. And couldn't have been. Well, this – As a practical matter. Well, that I can't agree with, because Judge Garcia's very words indicate it. So if we want to know that, we'd have to have an evidentiary. If that mattered, we'd have to have an evidentiary hearing. Well, only to put on Judge Garcia and ask him, what did you mean by these words? No, no, no. If the – if this courtroom is full to capacity and there's a jury box, if there were a jury box here, you could have four people – in fact, you would have four people leave without opening up seats, necessarily, for the spectators, right, because they would come out of the jury box. We don't know whether the – inside the bar, whether the replacements that would go into the jury box would necessarily open up seats for family and spectators. We don't know the layout of the courtroom. So I'm trying to ask you – So in fact, if four people go out, if I'm standing outside and I'm zilch about how they're jurors, I don't have any idea whether that means a seat's open. I would expect to be told by an official of the court saying, okay, there's a seat available now. Now, the more difficult question is, then there's – as the judge cites, there was a 15-minute recess. I don't expect him to remember the facts of what happened, but the layout, it would be helpful to know whether there was enough opportunity at that point for the family members outside to know, yes, there was an ability to come in. But if they're standing outside and nobody's opening the door to them and nobody's suggesting that a seat hasn't – that the condition that he put by his own words, seats open up, that that condition had been satisfied inside the courtroom, then I think we'd have to assume it's, as a practical matter, understood to be an exclusion for the entirety until somebody came and told them a seat had opened up. Well, I understand the point. I think Mr. Denver might agree with me here that it's not any of the judge's practices in our court to lock the doors during jury selection and there's only one ingress and egress for jurors. They would be leaving through the same double doors. If the members of the family are out in the hallway, they could easily see that    them a seat had opened up. In any event, as a procedural matter, you're not agreeing at this point that there was, in fact, a practical closure. So if we're not – if that matters to us, we would have to have an evidentiary. Correct. And – and What is your position if there is a hole in the record that is curious to the court of appeals, whose responsibility was it to fill the hole at the trial level? Well, if – if there's a hole in the record that causes you some concern, then the case should be remanded for fact-finding on those issues. Well, it's – it's clear in most instances that one party or the other has the responsibility of providing the record. If they don't do it, then we don't go back and do their lawyering for them, or we'd send every case back for some more fact-finding. What is the rule in the Ninth Circuit? What do the cases say as to who is the – has the responsibility of developing the record so that we know precisely what occurred? Well, I believe it's – in the first instance, it's the requirement – it's the requirement of the previous motion to set forth the facts showing relief is – is required. But 2255 says unless the motion in the files and records conclusively show that the prisoner is entitled to no relief, the court shall serve no notice and grant a prompt hearing thereon to determine the issues and make findings of fact and conclusions of law. So doesn't that create a presumption of an evidentiary hearing unless it's conclusively true that there's no relief? The defendants filed – the family members filed affidavits showing they were excluded from the courtroom. Right. This much we – we know. The affidavits don't say that the doors were locked, that there was some impediment to them getting back in the courtroom. It doesn't conclusively show that they're not entitled to relief. Well, it – it – the record clearly shows that Judge Garcia contemplated that they would be waiting out in the halls and that they could return when seats open up. Right. I think you marry those two facts together, and what additional facts would – would the Court be interested in knowing in order to find a constitutional violation? You are way over your time, because we used up your time, but thank you very much. Thank you. Thank you. We'll give you 3 minutes, since he was 5 minutes over his time. Just a couple of points, Your Honor.  One is that there may be a hole in the record on this question. What I would suggest to you is that Judge Garcia, a very experienced judge in dealing with this question, would have filled that hole in the record if there had been any question. He – he treated it as – as the family understood it, as a total exclusion and not – and it's true, the doors aren't locked. But the question is, wouldn't he, in dealing with this, if he felt those people should have been coming in, I meant them to come in, I don't understand what the And if we need an evidentiary hearing, I think that's fine. On the question of whether it's – it's well settled for – for appellate counsel to raise the public trial question on jury selection, Presley was decided after this appeal, Presley said it was a well settled issue under Riverside Enterprise and under Waller v. Georgia. It was well settled in the Supreme Court's mind. So the fact that Presley confirmed that later, counsel should have – should have raised it. And then the – the other thing, I want to go back, though, because I – I didn't get this in before. I think things that the Supreme Court has said are well settled, and then they reverse this because they decide we misread the well settled law. So, I mean, I take your point, but I also take counsel's point that, you know, until the Supreme Court says it's really well settled, it could be debatable. It is, Your Honor. But if you look at the principles of those two cases, it's pretty clear there would be no reason jury selection would be excluded from the public trial rights. But the other one – and I want to – I want to – because counsel didn't deal with this, and it's – they're making a big point about the failure to object by trial counsel, and they're saying that – that basically that was a procedural default of forfeiture by my client, and they're saying we can't do that. I'm saying they have forfeited that affirmative defense. I want to give you the cites on this because I didn't have it in the reply brief. The one where they said, in this case, he appealed his conviction but did not challenge the removal of his family members during jury selection, failing to do so, he procedurally defaulted that claim, not by failing to object at trial. That's document 145, filed on January 19, 2011, at pages 18 to 21 of 24. And the idea that – that Judge Garcia understood that was a limit only to the failure to raise on appeal, where he said, plaintiff argues defendant procedurally defaulted this claim by not raising it on appeal, and that the claim also fails on the merits. Nothing about failing to object in the trial court. That's the order, document 150, filed on March 3, 2011, at page 2. Unless the Court has some questions, I think my time is probably expiring. Thank you. Thank you very much. Thank you both of you for a useful argument and an interesting case. The case of United States v. Darney is submitted. We will – the next case, United States v. Wiley, is submitted under briefs. The following case is partly submitted under briefs, but we will hear argument in United States v. Mageno. And we will take a short recess after that.
judges: Wallace, Fisher, Berzon